1
2
3
4
5
6
7

8                           UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   United States of America,                    No. 2:11-cr-00356-KJM

12                  Plaintiff and                  ORDER
                    Respondent,

13

14        v.

15   Sergio Mendez,

16                  Defendant and
                    Movant.

17

18        Defendant Sergio Mendez moves to vacate, set aside, or correct his sentence under

19   28 U.S.C. § 2255.  *See generally* Mot., ECF No. 388.  He argues he received ineffective

20   assistance from his attorney during plea negotiations and sentencing.  As explained in this order,

21   the motion is **denied**.  Mendez has not shown a reasonable probability of a different outcome if

22   he had received the assistance he argues was due, as necessary under *Strickland v. Washington*,

23   466 U.S. 668, 694 (1984).

24   **I.      BACKGROUND**

25        The government indicted Mendez in 2011 for his role in a conspiracy to distribute

26   methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846.  *See generally* Indictment, ECF

27   No. 10.  His appointed attorney, Michael Chastaine, negotiated with prosecutors and met with

28   Mendez and a Spanish-language interpreter to discuss his options and potential outcomes.

                                              1

1  Chastaine Decl. ¶¶ 3–4, ECF No. 428-1.  Mendez ultimately decided to plead guilty even though

2  he did not reach an agreement with the government.  *Id.* ¶ 4.  This allowed him to retain his rights

3  to an appeal.  *Id.*

4       The court held a change-of-plea hearing in 2013.  *See* Mins., ECF No. 110; Plea Hr'g Tr.,

5  ECF No. 211.  Mendez was represented by Chastaine and had the assistance of a Spanish-

6  language interpreter during the colloquy.  Plea Hr'g Tr. at 3.  Mendez told the court he was

7  satisfied with Chastaine's assistance.  *See id.* at 8.  He confirmed he had discussed his options

8  with Chastaine and had decided to plead guilty because he "did what is said there."  *Id.*  The court

9  summarized the sentencing exposure Mendez would face if he pleaded guilty, including "a

10 minimum ten years up to life imprisonment" for two of the charges and "a minimum five years up

11 to 40 years imprisonment" for the third charge.  *Id.* at 11.  He said he understood.  *Id.*  Mendez

12 also understood how the actual length of his sentence would be set; he had discussed it with his

13 attorney.  *Id.* at 13–14.  After confirming Mendez was forgoing his trial rights, after reviewing the

14 elements of the charges against him, and after he agreed he had done what the government

15 alleged, the court formally took his guilty plea and scheduled a sentencing hearing.  *See id.* at 13–

16 22.

17      The probation office prepared a Presentence Investigation Report for the court, and

18 Mendez reviewed it with Chastaine and an interpreter.  *See* Sent. Hr'g Tr. at 9–10, ECF No. 208.

19 The court held a sentencing hearing a few months later.  *See* Mins., ECF No. 139.  A significant

20 portion of this hearing was devoted to two letters Mendez had written to the court.  *See* Sent. Hr'g

21 Tr. at 3–9; Letter Translation, ECF No. 132-2.  In these letters, he asked the court to consider the

22 desperate circumstances that had driven him to violate federal drug laws, the relatively minor role

23 he had played, his family, and his hope for a light sentence or clemency.  *See* Sent. Hr'g Tr. at

24 12–13, 17–25 (discussing the letters' contents).  His attorney similarly underscored Mendez's

25 poverty and his role as a "front man" rather than a "kingpin."  *See, e.g.*, *id.* at 20–25.  Chastaine

26 acknowledged these arguments were not "strictly legal."  *Id.* at 24.  He proposed a sentence of

27 fifteen years.  *Id.* at 24.  The court imposed a sentence of 262 months' imprisonment, or nearly 22

28 years -- the bottom of the Guidelines range -- based in part on Mendez's acceptance of

1    responsibility, poverty, role in the offense, possession of a loaded firearm, and previous narcotics

2    offense. *See id.* at 27–28.  Mendez pursued an unsuccessful appeal with the assistance of

3    appointed counsel.  *See* Mem. Disp., *United States v. Mendez*, No. 13-10443 (9th Cir. Feb. 29,

4    2016), Dkt. No. 55-1.

5         The Circuit's mandate issued in April 2016.  ECF No. 368.  In June, Mendez filed a pro se

6    motion to set aside or correct his sentence under 28 U.S.C. § 2255.  ECF No. 371.  The court

7    referred the matter to the Office of the Federal Defender to advise whether it would represent

8    Mendez in connection with his motion.  ECF No. 372.  In November, Mia Crager, Assistant

9    Federal Defender, appeared as Mendez's counsel and dismissed his § 2255 motion voluntarily on

10   his behalf.  ECF Nos. 385, 386, 387.  In December, Mendez filed a second § 2255 motion, Mot.,

11   ECF No. 388, and Crager withdrew, ECF No. 389; Min. Order, ECF No. 390.  This second

12   motion is pending.

13        Mendez raises two arguments.  First, he claims he did not receive effective assistance

14   from Chastaine in pursuing a plea agreement with the government.  Mot. at 4–5.  He argues, for

15   example, that Chastaine did not press a claim that Mendez was only a "middle man" and did not

16   show the government his gun had been out of reach under the seat.  *Id.* at 4.  Second, Mendez

17   argues Chastaine provided ineffective assistance during sentencing.  *See id.* at 5–6.  He claims

18   Chastaine should have objected to the Presentence Investigation Report's conclusions about his

19   criminal history, the effects of his previous conviction for illegally entering the United States, and

20   the potential for downward departures.  *See id.*

21        A little more than three months after Mendez filed his second motion, he requested

22   permission to supplement it.  *See* Mot. Suppl., ECF No. 395.  The court granted that request.

23   ECF No. 396.  Mendez also moved to appoint counsel, and the court granted that motion as well.

24   ECF Nos. 397, 398.  Erin Radekin, a CJA panel attorney, was appointed.  ECF No. 400.  The

25   court allowed Mendez to amend his new motion, ECF No. 411, but Radekin then gave notice

26   Mendez would not file a supplement, ECF No. 420.  Despite that notice, and despite Radekin's

27   status as his appointed counsel, Mendez filed two additional briefs on his own behalf raising

28   several new claims.  ECF Nos. 424, 427.  These briefs also include arguments that might be

1  construed as complaints about Radekin's assistance, *see* ECF Nos. 429, 433, so the court granted

2  her motion to withdraw, ECF Nos. 433, 434.  The government filed its opposition during the

3  same period.  *See generally* Opp'n, ECF No. 428.  After Radekin withdrew, the court appointed

4  Benjamin Ramos, ECF No. 435, who filed a reply on Mendez's behalf, *see generally* Reply, ECF

5  No. 438.  The matter is now submitted for decision.

6      Before turning to the motion, the court addresses the supplements Mendez filed on his

7  own behalf while he was represented by appointed counsel.  Litigants represented by counsel may

8  not file legal memoranda and other documents on their own behalf.  *See, e.g.*, *United States v.*

9  *Arceneaux*, No. 03-0371, 2019 WL 422562, at *1 (E.D. Cal. Feb. 4, 2019), *Findings &*

10 *Recommendations adopted*, 2019 WL 1572244 (E.D. Cal. Apr. 11, 2019); *Rodrigues v. Barnes*,

11 No. 12-2831, 2013 WL 4505590, *3 (N.D. Cal. 2013).  This court appointed counsel to represent

12 Mendez at his request, and an attorney's role is to provide "assistance" to the client.  *McCoy v.*

13 *Louisiana*, 138 S. Ct. 1500, 1508 (2018).  Attorneys provide assistance by deciding "what

14 arguments to pursue," among other things.  *Id.* (quoting *Gonzalez v. United States*, 553 U. S. 242,

15 248 (2008)).  For that reason, the court will not consider the arguments Mendez pursued on his

16 own while he was represented, as district courts commonly decline to do.  *See, e.g.*, *Ransom v.*

17 *Herrera*, No. 11-01709, 2019 WL 3817579, at *1 n.1 (E.D. Cal. Aug. 14, 2019) (disregarding pro

18 se filings by represented person); *Arceneaux*, 2019 WL 422562, at *1 (striking pro se filings by

19 represented defendant).

20 **II.   LEGAL STANDARD**

21     Mendez claims Chastaine, the attorney who represented him during plea negotiations and

22 sentencing, provided unconstitutionally ineffective assistance.  There is no dispute Mendez was

23 entitled to the effective assistance of an attorney at both points.  *See, e.g.*, *Missouri v. Frye*,

24 566 U.S. 134, 144 (2012) (plea negotiations); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)

25 (sentencing).  He is entitled to relief if he satisfies the two-part test of *Strickland v. Washington*,

26 466 U.S. 668 (1984).  First, he must show Chastaine's representation "fell below an objective

27 standard of reasonableness" as measured against the "prevailing professional norms" of the legal

28 community, reflected in "American Bar Association standards and the like."  *Padilla v. Kentucky*,

4

1   559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688).  Second, he must show "there is a

2   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

3   would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a

4   probability sufficient to undermine confidence in the outcome."  *Id.*

5   **III.   DISCUSSION**

6          It is not necessary to decide whether Chastaine's representation fell short of professional

7   standards because Mendez cannot satisfy the second part of the *Strickland* test, i.e., showing "a

8   reasonable probability that the end result of the criminal process would have been more favorable

9   by reason of a plea to a lesser charge or a sentence of less prison time."  *Frye*, 566 U.S. at 147.

10          Mendez makes two sets of arguments—one related to Chastaine's representation during

11   plea negotiations and the other related to representation during sentencing.  The first set relates to

12   Chastaine's representation during plea negotiations.  He claims Chastaine should have persuaded

13   prosecutors that he "was only the middle man," and he argues Chastaine did not emphasize "that

14   the gun found in his car was in a secured compartment under the seat," which made it practically

15   inaccessible.  Mot. at 4.

16          The record shows a more favorable result was not reasonably likely.  Mendez does not

17   dispute that he did what the government alleged, as summarized above.  His role in the

18   transaction and the gun's location were no secret.  In fact, Chastaine had persuaded prosecutors

19   "not to file the prior against Mr. Mendez and not to seek a leadership role" during plea

20   negotiations.  Chastaine Decl. ¶ 3.  The government also confirmed on the record that it had

21   pursued less severe charges and a lighter punishment for Mendez because he was not the supplier.

22   *See, e.g.*, Sent. Hr'g Tr. at 11 (acknowledging Mendez was not "an organizer or a leader" but

23   emphasizing "Mr. Mendez was the most serious of the offenders" apprehended).

24          The record also lacks evidence showing a particular government offer might have been on

25   the table.  Nor does Mendez claim he would have asserted his right to a trial.  His claims are

26   instead hypothetical: the government might have made a better plea offer, and he might have

27   accepted it.  *See* Mot. at 4.  Mendez concedes he can cite no evidence in the record to show

28   "counsel committed any prejudicial errors while advising [him]."  Reply at 10.  He cannot

1   succeed by relying on generic claims about what might have been different.  *See, e.g., Grisby v.*

2   *Blodgett*, 130 F.3d 365, 372–73 (9th Cir. 1997) (rejecting "speculative" claim of prejudice);

3   *Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1981) (same).

4         Mendez's second set of arguments concerns Chastaine's assistance during sentencing.  To

5   begin, he argues Chastaine did not object "to points added in the Presentence Investigation Report

6   (PSR) as to his criminal history."  Mot. at 5.  He argues the Ninth Circuit "repudiated" the

7   addition of these points in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), and he cites the

8   Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015).  Chastaine could not

9   have relied on *Dimaya* or *Johnson*, as both were decided two years after Mendez was sentenced,

10   so Mendez has not shown Chastaine's assistance was ineffective in this respect.  Similarly,

11   Mendez argues Chastaine wrongly "failed to object to the PSR's two levels added for the illegal

12   reentry conviction."  Mot. at 5.  He claims the Sentencing Guidelines have been amended "to

13   avoid having to include these types of additional points."  *Id.*  It is unclear what amendments

14   Mendez is relying on, but it is not necessary to investigate further.  Mendez does not claim these

15   amendments were available to Chastaine at the time.

16         Mendez also argues Chastaine should have helped him take advantage of a "fast track"

17   program under section 5K3.1 of the Sentencing Guidelines.  Mot. at 5.  "Fast-track sentencing

18   programs originated with federal prosecutors in states bordering Mexico, who were faced with

19   increasing numbers of illegal reentry and other immigration cases."  *United States v. Morales-*

20   *Chaires*, 430 F.3d 1124, 1127 (10th Cir. 2005); *see also* Memorandum for All United States

21   Attorneys from James M. Cole, Deputy Attorney General (Jan. 31, 2012) (Cole Memo).[1]

22   Defendants accused of certain immigration offenses could plead guilty and waive certain rights in

23   exchange for a different charge or a prosecutor's promise to recommend a downward departure.

24   *See United States v. Heredia*, 768 F.3d 1220, 1225 (9th Cir. 2014).  Congress and the Sentencing

25   Commission later authorized downward departures expressly.  *See Morales-Chaires*, 430 F.3d at

---

[1] https://www.justice.gov/sites/default/files/dag/legacy/2012/01/31/fast-track-program.pdf (last visited Feb. 14, 2023).  The court takes judicial notice of this memorandum on its own motion as an undisputed matter of public record.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

1   1127.  Under section 5K3.1 of the Sentencing Guidelines, "[u]pon motion of the Government, the

2   court may depart downward not more than 4 levels pursuant to an early disposition program

3   authorized by the Attorney General of the United States and the United States Attorney for the

4   district in which the court resides."  U.S.S.G. 5K3.1 (2012).[2]

5         The record does not include evidence to suggest a fast-track departure might have been

6   available to Mendez.  The prosecution did not pursue a charge for illegal reentry under 8 U.S.C.

7   § 1326, "the largest category of cases authorized for fast-track treatment."  Cole Memo at 3.

8   Prosecutors also commonly limit participation in fast-track programs based on previous drug

9   trafficking convictions, and Mendez had previously been convicted of another felony drug

10  offense.  *See id.*; PSR at 12, ECF No. 132.  In addition, a defendant must ordinarily agree to a

11  number of conditions before participating in a fast-track program.  Cole Memo at 3–4.  For

12  example, prosecutors may require defendants to waive appeals and post judgment collateral

13  attacks, *id.*, which Mendez decided not to do.  He has not shown he would have accepted

14  conditions such as these.  Again, generic claims about what might have happened and hopes for a

15  better outcome do not support his motion.  *See, e.g., Grisby*, 130 F.3d at 372–73; *Cooks*, 660 F.2d

16  at 740.

17        Finally, Mendez suggests in his reply that Chastaine misled him about how long his prison

18  sentence was likely to be.  *See* Reply at 13–20.  This claim is not in his motion, but the record

19  does not support it in any event.  The court warned Mendez before he changed his plea that he

20  faced a minimum sentence of ten years imprisonment and a maximum sentence of up to life

21  imprisonment, and explained the Sentencing Commission's now-advisory ranges.  Plea Hr'g Tr.

22  at 11, 13–14.  Mendez confirmed he had discussed sentencing with Chastaine, and Mendez said

23  he understood that "regardless of any estimate that Mr. Chastaine may have given [him, the court]

24  is the one that ultimately decides what the guideline range is . . . whether or not to depart from

25  that range, whether or not to go above or below it, and that's [the court's] decision alone[.]"  *Id.* at

26  13–14.

---

[2] The 2012 Sentencing Guidelines Manual applied in this case.  *See* Presentence
Investigation Report at 10, ECF No. 132.

7

1    **IV.    CONCLUSION**

2            Mendez has not shown by a reasonable probability that the result of his proceedings

3    would have been different, so under *Strickland v. Washington*, this court cannot grant his motion.

4    The motion to vacate or set aside (ECF No. 388) is **denied**.

5            IT IS SO ORDERED.

6    DATED:  February 15, 2023.

CHIEF UNITED STATES DISTRICT JUDGE